IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

Kenneth B.,[1]

    Plaintiff,

v.

**NANCY A. BERRYHILL**,
Acting Commissioner of Social Security,

    Defendant.

Civ. No. 6:18-cv-00206-MC

**OPINION AND ORDER**

**MCSHANE, Judge**:

    Plaintiff Kenneth B. brings this action for judicial review of a final decision of the Commissioner of Social Security ("Commissioner") denying his application for disability insurance benefits ("DIB") and supplemental security income ("SSI") under Title II of the Social Security Act. This Court has jurisdiction under 42 U.S.C. §§ 405(g) and 1383(c)(3).

    The issues before this Court are whether: (1) the Administrative Law Judge ("ALJ") gave clear and convincing reasons for rejecting Plaintiff's testimony; (2) the ALJ erred in rejecting Dr. Stephen Kerner, M.D.'s, medical opinion; and (3) the Commissioner met her burden of proving that Plaintiff can perform "other work" in the national economy.

    Because there is substantial evidence in the record to support the ALJ's findings, the Commissioner's decision is AFFIRMED.

---

[1] In the interest of privacy, this Opinion and Order uses only the first name and the initial of the last name of the non-governmental party in this case and any immediate family members of that party.

## PROCEDURAL AND FACTUAL BACKGROUND

Plaintiff applied for DIB and SSI on November 12, 2013, alleging disability since December 31, 2011. Tr. 155–61, 162–67, 51. Both claims were denied initially and upon reconsideration. Tr. 96, 101, 107, 110. Plaintiff timely requested a hearing before an ALJ and appeared before the Honorable Elizabeth Watson on August 8, 2016. Tr. 113, 31. ALJ Watson denied Plaintiff's claim by a written decision dated September 15, 2016. Tr. 10–18. Plaintiff sought review from the Appeals Council and was denied on December 14, 2017, rendering the ALJ's decision final. Tr. 1–6. Plaintiff now seeks judicial review of the ALJ's decision.

Plaintiff was 51 years 11 months old at the time of his alleged disability onset and 56 at the time of his hearing. *See* tr. 50, 31. Plaintiff completed tenth grade and worked as a dishwasher and prep cook. Tr. 40, 199, 216. Plaintiff alleges disability due to breathing problems, back pain, leg pain, and reading, writing, and learning difficulties. Tr. 37, 38, 50, 197.

## STANDARD OF REVIEW

The reviewing court shall affirm the Commissioner's decision if the decision is based on proper legal standards and the legal findings are supported by substantial evidence in the record. *See* 42 U.S.C. § 405(g); *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1193 (9th Cir. 2004). "Substantial evidence is 'more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Hill v. Astrue*, 698 F.3d 1153, 1159 (9th Cir. 2012) (quoting *Sandgathe v. Chater*, 108 F.3d 978, 980 (9th Cir. 1997)). To determine whether substantial evidence exists, the court reviews the administrative record as a whole, weighing both the evidence that supports and that which detracts from the ALJ's conclusion. *Davis v. Heckler*, 868 F.2d 323, 326 (9th Cir. 1989) (citing

*Martinez v. Heckler*, 807 F.2d 771, 772 (9th Cir. 1986)). "'If the evidence can reasonably support either affirming or reversing,' the reviewing court 'may not substitute its judgment' for that of the Commissioner." *Gutierrez v. Comm'r of Soc. Sec. Admin.*, 740 F.3d 519, 523 (9th Cir. 2014) (quoting *Reddick v. Chater*, 157 F.3d 715, 720–21 (9th Cir. 1996)).

## DISCUSSION

The Social Security Administration utilizes a five-step sequential evaluation to determine whether a claimant is disabled. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4) (2012). The burden of proof rests on the claimant for steps one through four, and on the Commissioner for step five. *Bustamante v. Massanari*, 262 F.3d 949, 953–54 (9th Cir. 2001) (citing *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999)). At step five, the Commissioner's burden is to demonstrate that the claimant can make an adjustment to other work existing in significant numbers in the national economy after considering the claimant's residual functional capacity, age, education, and work experience. 20 C.F.R. § 404.1520(a)(4)(v). If the Commissioner fails to meet this burden, then the claimant is considered disabled. *Id.*

### I. Plaintiff's Credibility

An ALJ must consider a claimant's symptom testimony, including statements regarding pain and workplace limitations. *See* 20 CFR §§ 404.1529(a), 416.929(a). Where there is objective medical evidence in the record of an underlying impairment that could reasonably be expected to produce the pain or symptoms alleged and there is no affirmative evidence of malingering, the ALJ must provide clear and convincing reasons for discrediting the claimant's testimony regarding the severity of her symptoms. *Carmickle v. Comm'r Soc. Sec. Admin.*, 533 F.3d 1155, 1160 (9th Cir. 2008); *Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2007).

The ALJ is not "required to believe every allegation of disabling pain, or else disability benefits would be available for the asking, a result plainly contrary to 42 U.S.C. § 423(d)(5)(A)." *Molina v. Astrue*, 674 F.3d 1104, 1112 (9th Cir. 2012) (quoting *Fair v. Bowen,* 885 F.2d 597, 603 (9th Cir. 1989)).

The ALJ "may consider a range of factors in assessing credibility." *Ghanim v. Colvin*, 763 F.3d 1154, 1163 (9th Cir. 2014). These factors can include "ordinary techniques of credibility evaluation," *id.*, as well as:

> (1) whether the claimant engages in daily activities inconsistent with the alleged symptoms; (2) whether the claimant takes medication or undergoes other treatment for the symptoms; (3) whether the claimant fails to follow, without adequate explanation, a prescribed course of treatment; and (4) whether the alleged symptoms are consistent with the medical evidence.

*Lingenfelter,* 504 F.3d at 1040. "If the ALJ's credibility finding is supported by substantial evidence in the record," this Court "may not engage in second-guessing," *Thomas v. Barnhart*, 278 F.3d 947, 959 (9th Cir. 2002) (citation omitted), and "must uphold the ALJ's decision where the evidence is susceptible to more than one rational interpretation," *Andrews v. Shalala*, 53 F.3d 1035, 1039–40 (9th Cir. 1995) (citation omitted).

"A finding that a claimant's testimony is not credible 'must be sufficiently specific to allow a reviewing court to conclude the adjudicator rejected the claimant's testimony on permissible grounds and did not arbitrarily discredit a claimant's testimony regarding pain.'" *Brown-Hunter v. Colvin*, 806 F.3d 487, 493 (9th Cir. 2015) (citing *Bunnell v. Sullivan,* 947 F.2d 341, 345–46 (9th Cir. 1991)). "General findings are insufficient; rather, the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints." *Reddick,* 157 F.3d at 722 (citations and internal quotation marks omitted). However, even when

an agency "explains its decision with 'less than ideal clarity,'" this Court must uphold it "if the agency's path may reasonably be discerned." *Molina*, 674 F.3d at 1121 (citations omitted).

Here, the ALJ found that Plaintiff's "medically determinable impairments could reasonably be expected to cause some of the alleged symptoms," but that his "statements concerning the intensity, persistence, and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record." Tr. 14. Specifically, the ALJ found that the objective medical evidence indicated only mild skeletal and respiratory system impairment. Tr. 15.

The ALJ summarized Plaintiff's asthma and respiratory issues as follows. Plaintiff reported dyspnea—labored breathing—and wheezing in July 2013 and again in September 2013, though his symptoms had improved with an inhaler. Tr. 14; *see* tr. 320, 330–31. Pulmonary function testing showed no airflow obstruction, a mild restrictive ventilatory defect, and normal diffusing—transfer of oxygen and carbon dioxide between the lungs and blood—capacity. Tr. 14; *see* tr. 343. As of February 2014, Plaintiff failed to increase his Dulera maintenance inhaler dosage to two puffs twice per day as instructed and was using his Proair rescue inhaler several times per day instead. *See* tr. 14, 296. Even so, his lungs sounded clear. Tr. 14; *see* tr. 297. He reported coughing and a choking feeling in July 2015, but his esophagram was negative. Tr. 14; *see* tr. 380. He reported no new respiratory episodes as of October 2015, his x-ray imaging was negative, and he had no significant limitation secondary to dyspnea. Tr. 14; *see* tr. 428.

Plaintiff testified that his breathing is labored, he tires very easily, and he cannot do anything for more than half an hour at most before having to sit down. Tr. 14; *see* tr. 37. Although Plaintiff's asthma is a severe impairment, the objective medical evidence of record

does not support Plaintiff's testimony regarding his breathing issues. *See.* tr. 12. First, two years of tests and imaging revealed nothing more than a mild restrictive ventilatory defect. Second, Plaintiff did not use his maintenance inhaler as instructed between September 2013 and February 2014. "[The Ninth Circuit has] long held that, in assessing a claimant's credibility, the ALJ may properly rely on unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment." *Molina*, 674 F.3d at 1113 (quoting *Tommasetti v. Astrue*, 533 F.3d 1035, 1039 (9th Cir.)) (internal quotation marks omitted). Third, Plaintiff smoked marijuana intermittently in contradiction to his prescribed course of treatment. Tr. 354, 369. And finally, Plaintiff's respiratory condition improved after continued treatment.

The ALJ then summarized Plaintiff's diffuse idiopathic skeletal hyperostosis ("DISH") and degenerative disc disease history, having found it to be a severe impairment. Tr. 12. In September 2013, an x-ray revealed that Plaintiff had DISH, which gave Plaintiff intermittent low back pain but did not interfere with his activities of daily living. Tr. 15; *see* tr. 331. Plaintiff reported frequent back pain secondary to DISH in November 2013, which again did not limit his activities of daily living. Tr. 15; *see* tr. 334, 337. Plaintiff reported no new pain in February 2014. Tr. 15; *see* tr. 302–03.

In October 2015, Plaintiff said that he was unable to stand for extended periods, but his pain still did not affect his ability to perform activities of daily living. Tr. 15; *see* tr. 428. Plaintiff reported chronic lower back pain in May 2016. Tr. 15; *see* tr. 438. However, Plaintiff did not report radiating symptoms. *Id.* In June 2016, imaging revealed multilevel degenerative disc disease without compression deformity or spondylolisthesis. *Id.*; *see also* tr. 385. The ALJ also

found that there was no medical evidence of abnormal gait requiring the use of a walking device. Tr. 15; *see* tr. 382–83.

In contrast, Plaintiff used a walking stick at the hearing and testified that he always uses it, even at home, for balance and to help his back and legs. Tr. 14; *see* tr. 40–41. He said that he was squirming in his chair at the hearing because it is hard for him to sit for long period of time— his legs fall asleep and his back hurts, so he has to stand up and walk around. Tr. 42. He said that he walks during most of the day and sits in a recliner five hours per day. Tr. 14; *see* tr. 42–43. He said that his roommate does the housework, cooking, and grocery shopping because he cannot. Tr. 14; *see* tr. 43. He said that his back hurts much more than it used to, but later said that his back pain was at its current level ninety-five percent of the time since 2012. Tr. 37, 41. Lastly, he said that he could only stand and be productive for two hours in an eight-hour workday and sit and be productive for four hours in an eight-hour workday. Tr. 42.

In *Brown-Hunter*, the Ninth Circuit reasoned that an ALJ's statement of her non-credibility conclusion and summary of the medical evidence was insufficient for meaningful review because she did not specifically identify inconsistencies between the claimant's testimony and the record. 806 F.3d at 494. Here, the ALJ did not explicitly identify inconsistencies between Plaintiff's testimony and the objective medical evidence. However, she summarized Plaintiff's testimony and the objective medical findings and concluded from the juxtaposition that Plaintiff was not entirely credible. Therefore, although the ALJ analyzed Plaintiff's credibility with "less than ideal clarity," this Court can reasonably discern the ALJ's path and must uphold her decision. *See Molina*, 674 F.3d at 1121 (citations omitted).

The ALJ also summarized an undated function report that was filed in 2013. Tr. 14; *see* tr. 204–11. An ALJ may rely on daily activities to form the basis of an adverse credibility determination if those activities contradict a plaintiff's testimony or involve the performance of physical functions that are transferable to a work setting. *Orn v. Astrue*, 495 F.3d 625, 639 (9th Cir. 2007). Plaintiff said that he had difficulty standing, sitting, and tolerating exposure to steam, heavy work, or more than twenty minutes of movement. Tr. 14; *see* tr. 204. Yet he reported no issues with personal care and could do laundry, light cleaning, and light yardwork. Tr. 14; *see* tr. 205–07. He went outside four to five times per day and walked, used public transportation, or rode in cars with friends. Tr. 14; *see* tr. 207. He shopped once per week for approximately two hours. *Id.* In fact, the record is replete with statements that Plaintiff's back pain did not affect his activities of daily living. *See* tr. 331, 337, 428.

The ALJ failed to mention that Plaintiff reported limited ability to lift, squat, bend, stand, kneel, and climb stairs. Tr. 209. Plaintiff also said that he had lower back pain after standing for fifteen minutes, had leg spasms after standing or sitting for fifteen to twenty minutes, and could only walk fifty yards before he needed to stop and rest for five to ten minutes. Tr. 204, 209. Still, given the record as a whole, the ALJ reasonably determined that many of Plaintiff's statements are inconsistent with his daily activities, thereby undermining his credibility.

Substantial evidence exists in the record to support the ALJ's finding that Plaintiff was not entirely credible. Therefore, the ALJ did not err in discounting Plaintiff's credibility.

## II. Dr. Kerner's Medical Opinion

Plaintiff next argues that the ALJ erred in rejecting Dr. Kerner's, Plaintiff's primary care provider, medical opinion. Pl.'s Br. 9.

"To reject an uncontradicted opinion of a treating or examining doctor, an ALJ must state clear and convincing reasons that are supported by substantial evidence." *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005) (citing *Lester v. Chater*, 81 F.3d 821, 830–31 (9th Cir. 1995)). "If a treating or examining doctor's opinion is contradicted by another doctor's opinion, an ALJ may only reject it by providing specific and legitimate reasons that are supported by substantial evidence." *Id.* When evaluating conflicting medical opinions, an ALJ need not accept a brief, conclusory, or inadequately supported opinion. *Bayliss*, 427 F.3d at 1216 (citing *Tonapetyan v. Halter*, 242 F.3d 1144, 1149 (9th Cir. 2001)).

Here, the ALJ gave Dr. Kerner's opinion little weight because she found it was not well supported by the objective medical evidence. Tr. 15. Dr. Kerner submitted two medical source statements. Tr. 376–77, 382-83. The first is dated October 28, 2015 and regards Plaintiff's condition from January 1, 2014 to October 28, 2015. Tr. 376–77. The second is dated July 6, 2016 and regards Plaintiff's condition from September 13, 2011 to July 6, 2016.

Taking both statements together, Dr. Kerner said that Plaintiff's impairments are likely to produce "good" and "bad" days and would likely cause him to be absent from work up to four days per month. Tr. 376, 382. He said that Plaintiff could stand and be productive for two hours in an eight-hour workday and sit and be productive for four to eight hours in an eight-hour workday. Tr. 376, 377. He also said that Plaintiff could never lift and/or carry more than ten pounds. *See* tr. 376, 383.

The ALJ gave great weight to two State agency medical consultants' opinions, Dr. Nathaniel Arcega, M.D., and Dr. James Buskirk, M.D. Tr. 15.[2] Dr. Arcega reviewed the medical

---

[2] The ALJ appears to have confused Dr. Buskirk with Dr. Jacqueline Farwell, M.D. *See* Def.'s Br. 12 n.4. Dr. Buskirk was the non-examining psychiatrist who conducted psychiatric review on reconsideration. *See* tr. 77. Dr.

evidence of record on March 11, 2014 and concluded that Plaintiff was capable of medium exertional activities despite his asthma, fatigue, and back pain. Tr. 62. He found Plaintiff to be only partially credible because the medical evidence of record did not establish physical or mental limitations as severe as Plaintiff alleged. Tr. 63. He said that Plaintiff could occasionally lift and/or carry 50 pounds, frequently lift and/or carry 25 pounds, stand and/or walk 6 hours in an 8-hour workday, sit for 6 hours in an 8-hour workday (with normal breaks), and push and/or pull for an unlimited amount of time. Tr. 63–64. He said that Plaintiff could climb ramps and stairs, balance unlimited, climb ladders, ropes, and scaffolds, kneel, crouch, and crawl frequently, and stoop occasionally. Tr. 55, 64. However, he said that Plaintiff should avoid concentrated exposure to fumes, odors, dusts, gases, poor ventilation, etc. Tr. 64–65. Dr. Jacqueline Farwell, M.D., agreed with Dr. Arcega's opinion. Tr. 78–80.

Because Dr. Arcega and Dr. Farwell's opinions contradict that of Dr. Kerner, the ALJ needed only provide specific and legitimate reasons supported by substantial evidence to properly reject Dr. Kerner's opinion. *See Bayliss*, 427 F.3d at 1216 (citing *Lester*, 81 F.3d at 830–31). The ALJ did so here.

An ALJ must weigh the following factors when considering medical opinions: (1) whether the source has an examining relationship with claimant; (2) whether the source has a treatment relationship with claimant; (3) supportability (as shown by relevant evidence and explanation); (4) consistency with the record as a whole; (5) specialization; and (6) other factors, including the source's familiarity with other information in the record. 20 C.F.R. § 404.1527(c)(1)–(6).

---

Farwell was the non-examining physician who evaluated Plaintiff's physical impairments on reconsideration. *See* tr. 78–80.

Here, the ALJ failed to weigh factors one, two, and six. *See* tr. 15. Dr. Kerner has an extensive examining relationship with Plaintiff dating back to 2004. Tr. 221, 272. Dr. Kerner does not appear to specialize in any relevant areas, and no other factors are at issue. However, the ALJ made two findings regarding supportability and consistency.

First, the ALJ discounted Dr. Kerner's statements that Plaintiff was limited by his back impairment and unable to stand for more than two hours or lift more than ten pounds because the record contained limited objective evidence of dysfunction. Tr. 15 (citing tr. 296–375, 384–454). Indeed, Plaintiff reported intermittent low back pain but no limitation of activities of daily living from September 11, 2013 to January 7, 2014. Tr. 362, 363, 354, 340, 345. He had no new pain secondary to DISH as of February 22, 2014 and no complaints other than elevated blood pressure as of February 26. Tr. 299, 302. His DISH was stable as of July 10, 2014. Tr. 318. And again, testing revealed little and his asthma had significantly improved by October 2015. *See* tr. 428. Second, the ALJ found that Dr. Kerner's opinions were inconsistent with each other. Tr. 15. The ALJ provided no examples or citations, but the evidence speaks for itself. Dr. Kerner's reports are dated less than nine months apart yet they are at times remarkably inconsistent. *See* 376–77, 382–83. For example, Dr. Kerner in his initial report said Plaintiff would likely be absent from work three to four times per month. That was then changed in his later report to only once per month. Tr. 376, 382. Dr. Kerner said Plaintiff could sit and be productive for four hours as of the first report and eight hours as of the second report. Tr. 376–77, 383. Dr. Kerner initially said Plaintiff could lift and/or carry up to ten pounds occasionally to frequently, then only five for up to one-third of an eight-hour workday and less than five for up to two-thirds of an eight-hour workday. Tr. 376, 383. He said Plaintiff could frequently balance and occasionally stoop, but

never climb, kneel, crouch, or crawl, then he said Plaintiff could never balance or stoop. Tr. 377, 383. Finally, he said Plaintiff did not have any functional loss or impairment or additional limitation of range of motion of the spine after repetitive use, then he said the opposite, though it still was not severe enough to result in abnormal gait. Tr. 376, 382.

Plaintiff argues that symptoms wax and wane over time and his impairments have worsened over time. Pl.'s Br. 16. However, some of his limitations had supposedly improved, not worsened, as of the second report; namely, his monthly absences from work and ability to sit and be productive. *See* tr. 376, 382; *see also* tr. 376–77, 383.

The ALJ gave specific and legitimate reasons supported by substantial evidence in giving Dr. Kerner's opinion little weight.

### III. The ALJ's RFC Finding

Lastly, Plaintiff argues that the ALJ's RFC finding is not supported by substantial evidence because she improperly relied on Dr. Arcega and Dr. Buskirk's findings and found only mild objective evidence of respiratory and skeletal dysfunction. Pl.'s Br. 18–23.

In formulating an RFC, the ALJ must consider all medically determinable impairments, including those that are not "severe," and evaluate "all of the relevant medical and other evidence," including the claimant's testimony. *Id.*; SSR 96-8p, 1996 WL 374184. In determining a claimant's RFC, the ALJ is responsible for resolving conflicts in the medical testimony and translating the claimant's impairments into concrete functional limitations in the RFC. *Stubbs-Danielson v. Astrue*, 539 F.3d 1169, 1174 (9th Cir. 2008). Only limitations supported by substantial evidence must be incorporated into the RFC and, by extension, the dispositive

hypothetical question posed to the vocational expert. *Osenbrock v. Apfel*, 240 F.3d 1157, 1163-65 (9th Cir. 2001).

Here, Plaintiff points to the ALJ's finding of greater postural and environmental limitations than Dr. Arcega. *Id.* at 19. The ALJ found that Plaintiff was limited to no more than frequent ramp, stair, ladder, rope, or scaffold climbing, whereas Dr. Arcega found no limitation. Tr. 13, 64. The ALJ also found that Plaintiff must avoid even moderate exposure to environmental irritants, whereas Dr. Arcega found Plaintiff must avoid concentrated exposure. Tr. 13, 65. The ALJ may disagree with parts of a medical consultant's findings and still properly rely on the rest. Further, there is substantial evidence in the record regarding Plaintiff's back and breathing issues that support the ALJ's heightened limitations. *See* tr. 14, 204, 320, 330–31, 385, 428, 438.

Plaintiff also takes issue with the ALJ's use of the term "moderate" regarding exposure to pulmonary irritants Pl.'s Br. 19. However, Plaintiff fails to identify any error. Two of the representative occupations that the vocational expert testified Plaintiff could maintain—hand packager and sandwich maker—don't involve any pulmonary irritants anyway. Moreover, even if it is ambiguous, "moderate" is even more restrictive than "concentrated," which falls in Plaintiff's favor.

Plaintiff also contends that the ALJ's reliance on "mild objective signs and objective diagnostic findings of respiratory and skeletal dysfunction" without citation cannot constitute substantial evidence. However, the ALJ previously summarized the objective medical evidence in her opinion, as explained above, and found limited objective evidence of dysfunction. *See* tr. 15 (citing 296–375, 438–454); *see also* 362, 363, 354, 345, 299, 302, 318, 428.

The ALJ's RFC finding is supported by substantial evidence in the record.

## **CONCLUSION**

For these reasons, the Commissioner's final decision is AFFIRMED.

IT IS SO ORDERED.

DATED this 8th day of March, 2019.

s/Michael J. McShane
Michael J. McShane
United States District Judge